UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| BONITA BUXTON, by herself and through her natural mother, CARMEN BUXTON, | ) ) ) ) | CIV. 09-5057 |
| Plaintiffs, | ) ) | REPORT AND RECOMMENDATION |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiffs Bonita Buxton and Carmen Buxton brought this action against the United States ("government"), for personal injuries under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, arising out of the arrest and imprisonment of Bonita Buxton by tribal officials while she was a juvenile.  The government moved to dismiss the Buxtons' lawsuit for lack of subject matter jurisdiction or failure to state a claim pursuant to FED. R. CIV. P. 12(b)(1) and (6).  See Docket No. 14.  In the alternative, the government moves for entry of summary judgment in its favor on the same grounds pursuant to FED. R. CIV. P. 56.  See Docket No. 20.  The district court, the Honorable Jeffrey L. Viken, referred the government's motions to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTS

The following facts are undisputed by all parties.  Bonita Cottier Buxton was born in 1991 and is an enrolled member of the Oglala Sioux Tribe (OST). See Docket Nos. 16 and 24, both at ¶ 1.  Bonita was adopted by Carmen Buxton in the OST Court on July 22, 1998, and raised by Diane Buxton, Carmen's daughter.  See Docket Nos. 16 and 24, both at ¶ 2.  Bonita refers to Diane as her "Mother." Id.

On May 16, 2005, Bonita was committed to the legal custody of the South Dakota Department of Corrections (DOC) for violating probation and petty theft.  See Docket Nos. 16 and 24, both at ¶ 3.  Linda Bias, a DOC employee, was Bonita's Juvenile Correction Agent.  See Docket Nos. 16 and 24, both at ¶ 4.  From May 16, 2005, until December 21, 2006, the DOC placed Bonita in a succession of juvenile programs and foster homes.  See Docket Nos. 16 and 24, both at ¶ 5.[1]  Bonita ran away from her DOC placement on June 16, 2006, and October 6, 2006, returning of her own accord on one of these occasions.  See Docket Nos. 16 and 24, both at ¶ 6.

The DOC placed Bonita with Diane again on December 21, 2006, on the condition that she attend school.  See Docket Nos. 16 and 24, both at ¶ 7.  On

---

[1]Plaintiffs' responses to paragraphs 5-8 of the government's statement of undisputed facts do not deny the allegations, but assert that the allegations are irrelevant.  See Docket No. 24, at 2.  Because plaintiffs do not assert any contrary facts to dispute these assertions by the government, they are admitted.

March 4, 2007, Bonita left Rapid City in violation of her agreement with DOC.
See Docket Nos. 16 and 24, both at ¶ 8.  On that same day, Diane filed a police
report, which was entered on the National Crime Information Center (NCIC),
which listed Bonita as a runaway.  See Docket Nos. 16 and 24, both at ¶ 10.
The next day, Linda Bias issued a detainer for Bonita on behalf of the DOC,
indicating that Bonita would be extradited when located.  See Docket Nos. 16
and 24, both at ¶ 9.  In March 2007, Diane and Carmen received word that
Bonita had traveled to the Pine Ridge Indian Reservation in the company of a
boy who was also on DOC supervision.  See Docket Nos. 16 and 24, both at
¶¶ 11, 13.

        At all relevant times during the events alleged in plaintiffs' complaint, law
enforcement and judicial services on the Pine Ridge Indian Reservation were
performed by employees of the OST under an Indian Self-Determination
Education Assistance Act Contract with the Bureau of Indian Affairs (BIA).
See Docket Nos. 16 and 24, both at ¶ 15.  These types of contracts are referred
to as "638 Contracts" because they are authorized by Public Law 93-638 under
the Indian Self-Determination Education Assistance Act, as authorized by 25
U.S.C. § 450f.  See Docket No. 15, at p.3, n.1.

        On April 13, 2007, Diane contacted OST police dispatch and requested
that they pick Bonita up.  See Docket Nos. 16 and 24, both at ¶ 12.  On the
same day, the DOC sent the OST Department of Public Safety, Pine Ridge

Police Department, a description, photos, and the detainer on Bonita.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 14.  On the same day, Tammy Grass, an OST juvenile prosecutor, filed a Juvenile in Need of Care Petition in tribal court premised on tribal law.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 16; <u>see also</u> Docket No. 18-1, p. 1.  The petition identified Diane as Bonita's parent/legal guardian/complainant.  <u>Id.</u>  The petition further asserted that Diane was seeking the tribe's help with regard to Bonita as Bonita was a possible runaway.  <u>Id.</u>  The petition averred that Bonita was an OST tribal member, had been missing for six weeks, and that a warrant for her arrest was requested. <u>Id.</u>

Upon presentation of the petition to an OST tribal court juvenile judge, a warrant for Bonita's arrest was issued.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 17; <u>see also</u> Docket No. 18-1, pp. 2-3.  The arrest warrant authorized law enforcement to take Bonita into "temporary custody;" and to transport her to the "Juvenile Detention Center in Kyle, SD;" where she was to be held until and arraignment and detention hearing could be held.  <u>Id.</u>  Said arraignment and detention hearing were ordered to be held within 48 hours of Bonita's arrest, excluding holidays and weekends.  <u>Id.</u>

Officer Gary Janis, employed by OST Department of Public Safety as a police officer, arrested Bonita later that same day pursuant to the warrant issued by the OST tribal judge.  <u>See</u> Docket Nos. 16 and 24, both at ¶¶ 18, 20;

4

<u>see also</u> Docket No. 18-1, at p. 4.[2]  She was booked into the juvenile detention center as "Bonita Cottier/Buxton" on charges of "being a juvenile in need of care" who was a "runaway from the Department of Corrections Rapid City." <u>See</u> Docket No. 18-1, at p. 4.  Although Officer Janis was an OST police officer, he did not on April 13, 2007, or at any other time, have a Special Law Enforcement Commission issued by the BIA as permitted by 25 C.F.R. § 12.21 which would have allowed him to enforce federal law.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 19.

When Bonita was arrested, both Linda Bias and Diane were notified that Bonita was being held at the Juvenile Detention Center in Kyle.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 21; <u>see also</u> Docket No. 17-2, p. 15-16.  Linda was advised that, as April 13 was a Friday, Bonita would be detained over the weekend and would have an extradition hearing on Monday, April 16, 2007.  <u>Id.</u>  Carmen Buxton, Diane's mother, traveled to Pine Ridge on April 19, 2007.  <u>See</u> Docket Nos. 16 and 24, both at ¶ 22.  Bonita was never charged with any

---

[2]Plaintiffs admit that Officer Janis arrested Bonita, but state that "it is unclear whether the Warrant was issued before or after her arrest."  <u>See</u> Docket No. 24, at ¶ 20.  Plaintiffs support their assertion of uncertainty with no citation to anything in the record.  <u>Id.</u>  Failure to contravene the government's assertion of fact with an affidavit, document, or even a mere citation is not sufficient to create an issue of fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).  Plaintiffs' failure to cite the court to any support for their assertion results in that fact being deemed admitted.  <u>Anderson</u>, 477 U.S. at 256; Fed. R. Civ. P. 56.

tribal criminal offense.  See Docket Nos. 16 and 24, both at ¶ 23.  Raquel

Reddest is the Facility Administrator of the Kyle Juvenile Detention Center.

See Docket Nos. 16 and 24, both at ¶ 24.  She is an OST employee, but not a

law enforcement officer.  Id.  She has never been issued a Special Law

Enforcement Commission by the BIA.  Id.

On April 30, 2007, the OST tribal court issued an order directing that

Bonita be taken to the Kyle Health Clinic for a pregnancy test.  See Docket Nos.

16 and 24, both at ¶ 25.  On May 3, 2007, the DOC sent a written request that

the tribe return Bonita to state custody.  See Docket Nos. 16 and 24, both at

¶ 26.  On May 9, 2007, OST Tribal Judge Steve Emery held a court hearing

with Bonita and issued a Temporary Commitment Order directing that Bonita

be detained at the Kyle juvenile facility "pending decision from [OST] Tribal

President Yellow Bird-Steele on weather [sic] to extradite juvenile back to the

custody of the state DOC."  See Docket Nos. 16 and 24, both at ¶ 27; Docket

No. 25-1, p. 47.  Bonita was held in tribal custody at the Kyle Juvenile

Detention Center from April 13, 2007, until October 12, 2007.  See Docket Nos.

16 and 24, both at ¶ 28.

During the time Bonita was held in custody by the tribe, she received

and made phone calls, however the number and timing of the phone calls are

disputed by plaintiffs.   See Docket Nos. 16 and 24, both at ¶ 29.  Linda Bias

testified that she contacted Bonita by telephone and spoke to her for the first

time on May 15, 2007, approximately one month after Bonita's arrest.  See Docket No. 17-2, p. 19.  Bias testified that she had additional telephone conversations with Bonita on June 19, July 19, July 25, August 1, August 28, September 18, and September 28, 2007, Docket No. 17-2, pp. 22, 23, 40-42.  Bias testified that Bonita spoke with Diane via telephone specifically on August 1, 2007.  Docket No. 17-2, p. 23.  Bias also testified that Diane told her Bonita had contacted Diane by phone multiple times.  Id. at 24.

Plaintiffs cite to several portions of Bonita's deposition for support for the proposition that Bonita was not allowed to make phone calls until she had been detained for three months.  See Docket No. 24 at ¶ 29.  Bonita's deposition establishes that, during her first weekend in detention, she was offered the opportunity to telephone her birth mother, Stephanie Cottier, or her uncle, both of whom were on the reservation.  See Docket No. 25-1, at pp. 15-16.  Bonita refused these offers.  Id.  She was told that she could not make long-distance telephone calls during that first weekend, so she was not allowed to call Diane or Linda Bias, who were in Rapid City.  Id.  She further testified that she had no contact with anyone, telephonic or otherwise, for her first two weeks in the Kyle facility.  Id. at p. 19.  Bonita did testify that she had a three-way conversation with Diane and Linda Bias on an unspecified date.  Id. at pp. 46-48.

7

Bonita did not receive any visits from any family members nor any educational assignments from any educational facility during her detention. See Docket Nos. 16 and 24, both at ¶ 31.  Bonita asserts that she was never advised of any opportunity to continue her education and that her family was never advised that they could visit.  Id.  Bonita was disciplined at least once while being detained at the Kyle facility, but the reason for the discipline is disputed.  See Docket Nos. 16 and 24, both at ¶ 30.

When Bonita was released from tribal custody, she returned to Rapid City to live with Diane and returned to school.  See Docket Nos. 16 and 24, both at ¶¶ 32, 33.  Bonita was discharged from DOC supervision on March 31, 2009.  See Docket Nos. 16 and 24, both at ¶ 34.  Bonita dropped out of school in April, 2009, because she was pregnant.  See Docket Nos. 16 and 24, both at ¶ 35.

After exhausting her administrative remedies, Bonita and Carmen Buxton brought this action against the government under the Federal Tort Claims Act.  The Buxtons' complaint is set forth in narrative fashion without enumerating separate counts.  The complaint alleges that the government entered into 638 contracts with the OST for the purpose of operating and administering a police department, jail, and court system.  See Docket No. 4, at ¶ 4.  Plaintiffs assert that all OST employees were performing actions under those contracts at all times alleged in the complaint.  Id.

8

Plaintiffs appear to allege that the government is liable for the negligent false arrest and imprisonment of Bonita.  See id. at  ¶¶ 5, 10, 17, 30 (alleging that Bonita's incarceration was without "grounds or reasons to keep her confined," that she was "unlawfully incarcerated," that she was arrested without "grounds to arrest or otherwise take [her] into custody," and that she was "unlawfully arrested").  Plaintiffs also allege that the conditions of Bonita's incarceration were "unkempt," "unhealthy, unsanitary, and unsafe. . . " See id. at ¶¶ 23, 39.  Plaintiffs assert that the actions of the OST employees were in violation of tribal code in that she was never provided with a hearing within 48 hours after her arrest, never provided with a probable cause hearing, and never provided with a trial or any other proceeding to determine if the charges against her were true.  See id. at ¶¶ 32-35.  Furthermore, plaintiffs allege that no pleadings or other documents were ever provided to Bonita's parents concerning her incarceration and that she was prevented from contacting her parents.  Id. at ¶ 36.

Plaintiffs allege that the actions of the OST employees involved in her case create liability for the government because they violated Bonita's rights under the Indian Civil Rights Act, 25 U.S.C. § 1302, in particular her right to have warrants issued only upon proof of probable cause, her right to a trial, her right to be free from cruel and inhuman punishment, and her rights to due process and equal protection.  Id. at ¶ 37.  Plaintiffs allege that Bonita suffered

physical, psychological, and emotional injury as a result of the actions of the OST employees' actions concerning her and that the United States would be liable to plaintiffs if it were a private person under the laws of the state of South Dakota and/or the OST tribal laws.  Id. at ¶¶ 39, 40.

The government's motion to dismiss or for summary judgment focuses on its argument that liability is exempted under the Federal Torts Claims Act for intentional torts, and that the torts of false arrest and false imprisonment are specifically mentioned as torts for which the United States government has not waived its sovereign immunity.  The government also argues that plaintiffs' claims for emotional distress are also barred under the Federal Tort Claims Act because they are based on the same conduct which gives rise to the false arrest and false imprisonment claims.  Finally, the government argues that plaintiffs cannot pursue a private right of action for money damages against the government for violations of the Indian Civil Rights Act of the United States Constitution.  Plaintiffs resist the government's motions in all respects.

## DISCUSSION

### A.    Summary Judgment Standard

The government has put forth alternative motions.  One motion is premised upon FED. R. CIV. P. 12(b)(1) and (6).  See Docket No. 14.  The other is premised upon FED. R. CIV. P. 56.  See Docket No. 20.  The difference between a Rule 12(b) motion and a Rule 56 motion is whether the movant relies upon

facts outside the plaintiffs' complaint in support of its arguments for judgment in its favor.  In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), although the court may make reference to facts outside the complaint, the motion is based primarily on the facts asserted in the complaint itself.  Osborn v. United States, 918 F.2d 724, 729-30 (8th Cir. 1990).  A motion for summary judgment relies extensively upon the assertion of additional facts, supported by affidavit, sworn deposition testimony, or other documentation.

Both parties in this case have submitted extensive factual matters outside the facts put forth in the complaint.  Accordingly, the court will employ the standard applicable to a summary judgment motion under Rule 56 to resolve the government's arguments.  See Trujillo v. United States, 313 F. Supp. 2d 1146, 1148-49 (D.N.M. 2003) (where government's argument that the court lacked subject matter jurisdiction under the FTCA was intertwined with the merits of the case and both parties had referenced extensive material outside the pleadings, the court would resolve the matter under Rule 56); Whalen v. United States, 29 F. Supp. 2d 1093, 1095 (D.S.D. 1998) (acknowledging that court may resolve a motion to dismiss for lack of subject matter jurisdiction under the FTCA pursuant to summary judgment standard where the jurisdictional issue is intimately intertwined with the merits).  Cf. Hinsley v. Standing Rock Child Protective Services, 470 F. Supp. 2d 1037,

11

(D.N.D. 2007) (applying summary judgment standard to government's argument that the court lacked subject matter jurisdiction due to an exception from liability provided under § 2680 of the FTCA).

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Factual disputes must be of such a nature that they could affect the outcome of the case in order to preclude summary judgment. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. Id. The substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 247.

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether summary judgment should issue, the court views the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, supported by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e)(each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)[3]). In determining whether a genuine issue of material fact exists, the court views the evidence presented in light of which party has the burden of proof under the underlying substantive law. Id.

The Supreme Court has summarized as follows:

> the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved *conclusively* in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

Anderson, 477 U.S. at 249-49 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968) (emphasis added)). Essentially, the availability of summary judgment turns on whether a proper jury question is presented. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). "The

---

[3]Rule 56(c) provides the methods by which each party must support its own assertions of fact, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. With the foregoing standard in mind, the court now turns to the government's motion for summary judgment.

**B.     Government Liability for False Arrest and False Imprisonment**

The government's motion raises the issue of whether this court has subject matter jurisdiction over plaintiffs' claims.  It is axiomatic that federal courts are courts of limited jurisdiction, having the power to hear only those cases authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant to Article III.  Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) (citing Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986)).

Plaintiffs' assertion of liability against the government is premised on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), and 2671 et seq.  Under the FTCA, the government enacted a limited waiver of its own sovereignty for certain negligent acts of its employees carried out in the course and scope of their employment with the government.  United States v. Orleans, 425 U.S. 807, 813 (1976).  The government is liable to the same extent as a private party if the acts complained of had been committed by a private party.  Id.  Because

14

the United States "can be sued only to the extent that it has waived its

immunity, due regard must be given to the exceptions, . . ." <u>Id.</u> at 814.

One such exception to the government's waiver of sovereignty is the

exception for intentional torts found at 28 U.S.C. § 2680(h).  That provision

states that the waiver of sovereign immunity under the FTCA does not apply to:

> (h)  Any claim arising out of assault, battery, false imprisonment,
> false arrest, malicious prosecution, abuse of process, libel, slander,
> misrepresentation, deceit, or interference with contract rights:
> *Provided*, That, with regard to acts or omissions of investigative or
> law enforcement officers of the United States Government, the
> provisions of this chapter and section 1346(b) of this title shall
> apply to any claim arising, on or after the date of the enactment of
> this proviso, out of assault, battery, false imprisonment, false
> arrest, abuse of process, or malicious prosecution.  For the
> purpose of this subsection, "investigative or law enforcement
> officer" means any officer of the United States who is empowered
> by law to execute searches, to seize evidence, or to make arrests for
> violations of Federal law.

<u>See</u> 28 U.S.C. § 2680(h) (emphasis in original).  Thus, under the FTCA, the

above enumerated intentional torts are not actionable unless they were

perpetrated by "an investigative or law enforcement officer[] of the United

States Government. . ." <u>Id.</u>  The first part of subsection (h) carves out an

intentional tort exception to the government's liability under the FTCA; the

second part of subsection (h) creates an "exception to the exception," restoring

FTCA liability if the tort was committed by a federal law enforcement officer.

<u>Id.</u>

15

The government relies upon § 2680(h) in arguing that the Buxtons'
claims for false arrest, false imprisonment, malicious prosecution, and abuse of
process are not contained within the government's waiver of sovereignty and
cannot, therefore, be the basis of a FTCA action.  Furthermore, the government
argues that the "federal law enforcement officer" exception to the intentional
torts exception does not apply to the Buxtons' claims in this case because none
of the OST tribal officers or employees who played a part in the arrest and
detention of Bonita are within the definition of "an investigative or law
enforcement officer of the United States Government."

Plaintiffs have not asserted facts which would contravene or create a
disputed issue of fact regarding whether the OST employees or officers involved
in this case ever held Special Law Enforcement Commissions from the BIA that
would qualify them as "investigative or law enforcement officers of the United
States Government."  However, plaintiffs point to Public Law No. 101-512,
enacted on November 5, 1990, as an amendment to the Indian Self-
Determination Education Assistance Act, and argue that this provision
provides a basis for asserting liability against the government under the facts of
this case.  Public Law No. 101-512 provides in pertinent part as follows:

> With respect to claims resulting from the performance of functions
> . . . under a contract, grant agreement, or any other agreement or
> compact authorized by the Indian Self-Determination and
> Education Assistance Act . . . an Indian tribe, tribal organization or
> Indian contractor is deemed hereafter to be part of the Bureau of
> Indian Affairs . . . while carrying out any such contract or

16

> agreement and its employees are deemed employees of the Bureau
> . . . while acting within the scope of their employment in carrying
> out the contract or agreement: *Provided*, That after September 30,
> 1990, any civil action or proceeding involving such claims brought
> hereafter against any tribe, tribal organization, Indian contractor
> or tribal employee covered by this provision shall be deemed to be
> an action against the United States and will be defended by the
> Attorney General and be afforded the full protection and coverage
> of the Federal Tort Claims Act . . .

Pub. L. 101-512, Title III, § 314, Nov. 5, 1990, 104 Stat. 1959, as amended

Pub. L. 103-138, Title III, § 308, Nov. 11, 1993, 107 Stat. 1416 (codified in the

notes following 25 U.S.C. § 450f).  Plaintiffs make two arguments in reliance on

Pub. L. 101-512.

First, plaintiffs argue that Pub. L. 101-512 transforms tribal police

officers into "federal law enforcement officers" within the purview of the second

provision (the exception to the exception) under § 2680(h).  Second, plaintiffs

argue that the above provision, in essence, "trumps" the exception described at

28 U.S.C. § 2680(h) of the FTCA and provides liability against the United States

anytime a tribal employee commits negligent acts pursuant to a 638 contract,

regardless of whether the tribal employee is a "federal law enforcement officer."

Because Pub. L. 101-512 does not itself make reference to any exceptions to

liability under the FTCA, plaintiffs argue that Pub. L. 101-512 creates FTCA

liability without any exceptions, including without that exception provided

under § 2680(h).

17

As to the plaintiffs' first contention, a plain reading of Pub. L. 101-512 easily dispenses with that argument.  Under Pub. L. 101-512, any tribal employee acting pursuant to a 638 contract is deemed an employee of the Bureau of Indian Affairs.  See Pub. L. 101-512.  In this case, the government does not dispute that all of the tribal actors were acting pursuant to 638 contracts and that, by virtue of Pub. L. 101-512, they are all  deemed to be employees of the Bureau of Indian Affairs.  However, Pub. L. 101-512 says nothing about transforming BIA employees into federal law enforcement officers.  The fact that a separate process exists provided by regulation for conferring federal law enforcement status on tribal police belies plaintiffs' assertions.  See 25 C.F.R. § 12.21.  If all tribal police were automatically rendered federal law enforcement officers by virtue of Pub. L. 101-512, there would be no need for a separate process to confer such status.

Plaintiffs have cited the court to no authority in support of their interpretation of Pub. L. 101-512 and the court has found no authority to that effect.  Furthermore, such a contention is not borne out by the discussion contained in the following cases.

The Eighth Circuit analyzed the interplay between Pub. L. 101-512 and another exception to FTCA liability found in 28 U.S.C. § 2680 in Hinsley v. Standing Rock Child Protective Services, 516 F.3d 668 (8th Cir. 2008).  In that case, a FTCA claim was brought in federal court for negligent actions of tribal

employees under a 638 contract involving the provision of child protective services.  Id. at 670-71.  Summary judgment was granted by the district court because, although FTCA liability against the government was provided by Pub. L. 101-512, the court held that that extension of FTCA coverage was subject to all the same exceptions from liability found within the FTCA, including those found in § 2680.  Id. at 672 (stating that, "[t]he FTCA, however, includes a number of exceptions to its broad waiver of sovereign immunity–and these exceptions apply with equal force to FTCA claims brought against a tribal organization).  This included the discretionary function exception, 28 U.S.C. § 2680(a), which provided immunity from FTCA liability under the facts of the case according to the Eighth Circuit.  Id. at 673-74.

The Hinsley case is especially persuasive.  It constitutes a decision of the Eighth Circuit, which decisions are binding on this court, unlike district court decisions from other districts.  In addition, it considered the applicability of 28 U.S.C. § 2680 in the context of FTCA liability premised on the acts of a tribal employee acting pursuant to a 638 contract.  Id.  Section 2680 is, of course, the same statute at issue in this case, albeit a different subdivision of that statute.  When asked to determine how Pub. L. 101-512 should be construed in connection with § 2680, the Eighth Circuit unequivocally held that the exceptions contained in § 2680 applied with full force and effect in cases

involving FTCA claims premised on acts of tribal employees acting pursuant to 638 contracts.  Hinsley, 516 F.3d at 672.

A number of lower courts have reached the same conclusion:  Public Law 101-512 extends the government's FTCA liability to tribal employees acting under 638 contracts, but that FTCA liability is "subject to the [same] protections and immunities afforded government employees under the [Federal Tort Claims] Act."  Mentz v. United States, 359 F. Supp. 2d 856, 860 (D.N.D. 2005).  See also Mizner v. United States, Civ. No. 02-3015-CBK, Docket No. 44, at pp. 5-11 (Dec. 5, 2003) (applying § 2680(h) exclusion to tribal police officers who, by virtue of a 638 contract, were BIA employees, but not "federal law enforcement" officers within the meaning of § 2680(h)); Gibbons v. United States, Civ. No. 00-5129, Docket No. 43 at 1-3, 5-6 (D.S.D. Aug. 3, 2001) (dismissing plaintiff's FTCA claims because the tribal officers in question were not federal law enforcement officers).[4]

In Locke v. United States, 215 F. Supp. 2d 1033 (D.S.D. 2002), aff'd 63 Fed. Appx. 971 (8th Cir. 2003), the plaintiff brought a FTCA against the government for an assault committed by a tribal police officer.  Id. at 1035-36. The government admitted that the tribal officer committed the assault, admitted that he was employed under a 638 contract, and that he committed

---

[4]Counsel for the Buxtons in this case also represented the plaintiff in the Gibbons case.

the assault during the course and scope of his employment.  Id. at 1036.

However, the government moved to dismiss for lack of subject matter

jurisdiction, arguing that § 2680(h) excluded the tort of assault from coverage

under the FTCA unless the officer was a "federal law enforcement" officer.  Id.

The government asserted that the officer was not a federal law enforcement

officer, a fact the plaintiff did not contravene.  Id. at 1036, 1038.  Based on

§ 2680(h), the court dismissed the assault charge for lack of jurisdiction.  Id. at

1038-39.

Nor are the above interpretations of Pub. L. 101-512 and § 2680(h)

limited to this circuit.  The exact argument posited by the Buxtons in this case

was also asserted by the plaintiff in Trujillo v. United States, 313 F. Supp. 2d

1146 (D.N.M. 2003).  In that case, tribal police officers had allegedly assaulted

the plaintiff in the course of making a false arrest.  Id. at 1148.  The

government moved to dismiss based on lack of subjection matter jurisdiction

due to the application of 28 U.S.C. § 2680(h).  Id. at 1149.  The government

conceded that, although the tribal officers in question were considered BIA

employees under the amendment to the Indian Self-Determination and

Education Assistance Act (Pub. L. 101-512), they were not "federal law

enforcement officers" for purposes of § 2680(h).  Id. at 1150-51.  Specifically,

the government argued that the tribal officers lacked special law enforcement

officer commissions that would allow them to enforce federal law.  Id.  The

district court agreed and found that the government was immune from FTCA liability under § 2680(h) for the acts of the tribal officers.  Id.  See also Dry v. United States, 235 F.3d 1249, 1257-58 (10th Cir. 2000) (holding plaintiffs' FTCA claims stemming from tribal officers' allegedly false arrests and false imprisonment were barred by § 2680(h) because such officers were not federal law enforcement officers).

The Buxtons do not dispute that none of the tribal actors involved in Bonita's arrest and detention were federal investigative or law enforcement officers as contemplated by the second part of § 2680(h).  However, the Buxtons argue that the Dry and Locke decisions were wrongly decided and that the rest of the contrary authority cited by the government is "circular" in that all the cases cite back to the Dry or Locke decision or to each other.

However, the Buxtons have failed to cite to a single case, in this circuit or any other, that has interpreted Pub. L. 101-512 to create FTCA liability for the government for all acts of tribal employees acting pursuant to 638 contracts, and that the exceptions and immunities described by the FTCA are inapplicable in such cases.  This court is convinced that the plethora of cases cited above have not analyzed the issue incorrectly.  Although Pub. L. 101-512 extends FTCA liability for tribal employees acting pursuant to 638 contracts, that extension includes all the exceptions to liability described in the FTCA, including that exception found at § 2680(h).  Hinsley, 516 F.3d at 672; Mentz,

22

359 F. Supp. 2d at 860; <u>Locke</u>, 215 F. Supp. 2d at 1035-39; <u>Dry</u>, 235 F.3d at 1257-58; <u>Trujillo</u>, 313 F. Supp. 2d 1148-51.  Since Bonita's claims fall squarely within the exception from liability under the FTCA as described in § 2680(h), this court lacks jurisdiction to entertain those claims.  <u>Hinsley</u>, 516 F.3d at 672; <u>Mentz</u>, 359 F. Supp. 2d at 860; <u>Locke</u>, 215 F. Supp. 2d at 1035-39; <u>Dry</u>, 235 F.3d at 1257-58; <u>Trujillo</u>, 313 F. Supp. 2d 1148-51.  Accordingly, the court recommends granting the government's motion for summary judgment as to the Buxtons' false arrest, false imprisonment, abuse of process, and malicious prosecution claims.

## C.   Government Liability for Negligence and Infliction of Emotional Distress

The Buxtons point out that they have also asserted claims for negligence, and for negligent and intentional infliction of emotional distress.[5]  However, the government argues that these claims, too, are prohibited by § 2680(h) because these negligence and emotional distress claims are based on the same conduct by the tribal employees that forms the basis of her false arrest, false imprisonment, and other intentional tort claims.

In the <u>Locke</u> case, discussed *supra*, the plaintiff urged the court to retain jurisdiction over her claims for negligent and intentional infliction of emotional

---

[5]The court interprets Bonita's allegations that she was deprived of contact with Diane, and that she was held in unsanitary and unkempt conditions to be part and parcel of the emotional distress claims since she does not alleged any physical injury as a result of these actions by the tribal actors.

distress, as these claims were not among those listed torts barred under
§ 2680(h).  Locke, 215 F. Supp. 2d at 1039.  The court held that plaintiff's
emotional distress claims were also barred by § 2680(h) because those claims
were based on the same conduct as the assault claim.  Id. at 1040.  The court
noted that § 2680(h) bars liability not just for assault, but for "[a]ny claim
arising out of assault, . . . ."  Id. (quoting § 2680(h)).

In the Trujillo case, discussed *supra*, the plaintiff not only asserted
claims for assault and battery, but also asserted claims for negligent and
intentional infliction of emotional distress arising out of the same facts.
Trujillo, 313 F. Supp. 2d at 1152.  The court noted that § 2680(h) not only bars
claims for assault and battery, but also any claims "arising out of" assault and
battery.  Id.  Thus, the court concluded that § 2680(h) barred the primary
claims of assault and battery, and also the claims for infliction of emotional
distress arising out of the assault and battery.  Id.

The court noted that the nature of the claim depended not on the artful
pleading of the claim by the plaintiff, but rather on the conduct upon which the
claim was based.  Id.  Because the conduct of the tribal officers on which the
infliction of emotional distress claims were premised was the same conduct
which formed the basis of the assault and battery claims, all the claims were
barred by § 2680(h).  Id. (citing United States v. Shearer, 473 U.S. 52 (1985)).

24

The same result was reached in the <u>Mizner</u> case where the plaintiff asserted a claim for intentional infliction of emotional distress arising out of assault and false imprisonment claims that were barred under § 2680(h).  <u>See</u> <u>Mizner</u>, Civ. No. 02-3015-CBK, Docket No. 44, at pp. 11-13 (D.S.D. Dec. 5, 2003) (recognizing that the Eighth Circuit case of <u>Gross v. United States</u>, 676 F.2d 295 (8th Cir. 1982), was essentially overruled by the Supreme Court's decision in <u>United States v. Shearer</u>, 473 U.S. 52, 57 (1985)).

In an analogous case, the Eighth Circuit interpreted Nebraska's state law version of the FTCA in <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1487 (8th Cir. 1990).  Like § 2680(h), the Nebraska statute in question excepted from liability "any claim arising out of . . . [a] battery."  <u>Id.</u> at 1488.  The plaintiffs asserted claims couched in negligence for an Omaha police officer's shooting of a man.  <u>Id.</u> at 1487-88.  The court noted that the claim of battery was excluded from coverage under the Nebraska statute.  <u>Id.</u> at 1488-89.  The court then held that plaintiffs' negligence claim was also barred by the language of the statute because it was based on the same conduct which formed the basis for the battery claim.  <u>Id.</u> at 1489-90.  Quoting <u>Shearer</u>, the <u>Westcott</u> court stated that, "[n]o semantical recasting of events can alter the fact that the battery was the immediate cause of [plaintiffs'] death and, consequently, the basis of the respondent's claim."  <u>Id.</u> at 1489 (quoting <u>Shearer</u>, 473 U.S. at 55).  Likewise, the quote continued, plaintiff "cannot avoid the reach of § 2680(h) by framing

her complaint in terms of negligen[ce]," because the "sweeping language" of § 2680(h) bars not only the listed intentional torts, but any claims arising out of those intentional torts.  Id. at 1490 (quoting Shearer, 473 U.S. at 55).

Accordingly, the court recommends granting the government's motion for summary judgment as to the Buxtons' negligence, and negligent and intentional infliction of emotional distress claims as those claims arise out of the same conduct which forms the basis of plaintiffs' false arrest, false imprisonment, malicious prosecution, and abuse of process claims.   Shearer, 473 U.S. at 57-59; Westcott, 901 F.2d at 1490; Locke, 215 F. Supp. 2d at 1039-40; Trujillo, 313 F. Supp. 2d at 1152.

## D.   Government Liability for Breach of Contract

The only basis asserted by the Buxtons in their complaint for this court's jurisdiction is the FTCA.  However, in their brief in opposition to the government's motion for summary judgment, the Buxtons point out numerous instances in which the tribal employees' actions violated the 638 contract that the OST entered into with the United States.[6]  Tort claims only, not contract claims, are the purview of the FTCA.  See 28 U.S.C. § 2674.  Interference with contractual relations, while it is a tort, is one of the intentional torts barred from FTCA coverage.  See 28 U.S.C. § 2680(h); Selland v. United States, 966

---

[6]The contract required the OST to observe the requirements of the Indian Civil Rights Act as well as the OST Tribal Code, both of which the Buxtons assert the tribal employees violated in their actions with regard to Bonita.

F.2d 346, 347 (8th Cir. 1992).  Accordingly, the court recommends granting the government's motion for summary judgment as to any contract claims or interference with contract claims asserted by the Buxtons because they are either not covered entirely by the FTCA, or they are barred by the "arising out of" language of § 2680(h).

**E.     Government Liability for Violations of the Indian Civil Rights Act**

The Buxtons alleged that the tribal officials in this case violated the civil rights protections afforded by the Indian Civil Rights Act, 25 U.S.C. § 1302. The Supreme Court has definitively held that the Indian Civil Rights Act does not provide a private cause of action for money damages for violation of its provisions.  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 72 (1979). Furthermore, violations of the Indian Civil Rights Act are not contemplated under the umbrella of the FTCA.  See 28 U.S.C. §§ 2674, 2679, 1346. Plaintiffs' argument that the OST was required to observe the requirement of the Indian Civil Rights Act as part of its 638 contract with the government is subsumed with the arguments posited and dispensed with in subsection D, immediately preceding in this opinion.  Accordingly, the court recommends that the government's motion for summary judgment on any claims premised on the Indian Civil Rights Act be granted.

27

**F.     Government Liability for Violations of the United States Constitution**

The Buxtons' complaint asserts the FTCA as the sole basis for this court's jurisdiction.  However, to the extent the Buxtons can be understood to assert that the tribal officials violated their federal constitutional rights, the court addresses that issue.

The United States Constitution is not binding on tribes.  Dry, 235 F.3d at 1255 (citing Talton v. Mayes, 163 U.S. 376, 382-85 (1896); and Wheeler v. Swimmer, 835 F.2d 259, 262 (10th Cir. 1987)); Barta v. Oglala Sioux Tribe, 259 F.2d 553, 556 (8th Cir. 1958).  Therefore, the tribal officers or the OST cannot be sued for violation of Bonita's federal constitutional rights.  Those parties are not named as defendants, in any case.

The FTCA only waives sovereign immunity to the extent previously described–it provides liability for negligent *torts* committed by federal employees acting within the course and scope of their employment.  Thus, the FTCA cannot provide a basis for the Buxtons' federal *constitutional* claims.  See 28 U.S.C. § 2679(b)(2)(A) (the FTCA does not waive the government's sovereign immunity for violation of the federal constitution).

Section 1983 of Title 42 of the United States Code does provide a private right of action for money damages for violations of constitutional rights under color of state law.  See 42 U.S.C. § 1983.  The Buxtons have not invoked

28

§ 1983 nor have they pleaded facts which would support an inference that the tribal employees in this case were acting under color of *state* law.

The court can find no legal basis asserted by the Buxtons, in either their complaint or in their briefs on the government's motions to dismiss, which would support the assertion of a claim premised on violation of the Buxtons' federal constitutional rights. Accordingly, the court recommends that the government's motion for summary judgment as to these claims be granted.

## CONCLUSION

What the government agrees happened to Bonita Buxton in this case at the hands of tribal officials, particularly the fact that she was held for over a month before she was ever afforded a hearing in tribal court so that she could learn what the charges were against her and what her rights were, that she was never afforded an opportunity for bail, and that she never received advice or assistance from counsel or even a lay advocate, is indefensible. It is particularly reprehensible in that Bonita's is not a unique case. However, that does not change the fact that it is simply not actionable under the Federal Tort Claims Act.

Many of the actors–the tribal court judge and prosecutors–were not even law enforcement officers, so there is no question that they were covered by the exception to liability provided by § 2680(h). Officer Janis, while a law enforcement officer, acted only pursuant to the court's arrest warrant, had no

involvement in the duration of Bonita's incarceration, and was never a federal law enforcement officer.  He, too, was afforded immunity under § 2680(h).

Finally, the court notes that Bonita, and any other person in her situation, is not without recourse.  There is habeas relief available to persons who believe that they are being wrongfully incarcerated or detained by an Indian tribe.  See 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.").  There is every reason to believe that the habeas rights afforded under 25 U.S.C. § 1303 will be swiftly enforced.  See Chipps v. Oglala Sioux Tribal Court, Civ. No. 10-5028. Furthermore, a Bivens action against the individuals responsible for the conduct is also possible.  See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (establishing a private right of action on the part of individuals to sue individual federal agents for damages for unconstitutional conduct in violation of the Fourth Amendment).

Based on the foregoing, it is respectfully recommended that:

1.    the motion by the United States to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6) be denied as moot [Docket No. 14]; and

2.    the motion by the United States for summary judgment pursuant to FED. R. CIV. P. 56 be granted in all respects [Docket No. 20].

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(b)(2).  A party may respond to another party's objections within 14 days of being served with a copy.  Id.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 1st day of April, 2011.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

31